THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON

*v.*

THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY et al.

[Submitted June 25th, 1914.  Decided June 29th, 1914.]

1. In a suit to restrain a railroad company from laying a track across a much-traveled highway in addition to two tracks already laid and in operation, where no relief was asked against the existing tracks, an injunction would be denied, though travel on the highway was impeded by the existing tracks contrary to the charter of the railroad company's lessor, act January 29th, 1835 (*P. L. 1835 p. 25*), and General Railroad

act (*3 Comp. Stat. 1910 p. 4231 § 26*), unless the additional track would further impede such travel.

2. In a suit to enjoin the laying of an additional railroad track across a much-traveled highway across which defendant was operating two tracks upon which about two hundred and fifty trains passed every twenty-four hours, evidence *held* to show that the additional track would not increase the dangers of the crossing or add to the congestion of traffic thereat, but that, on the contrary, it would relieve such congestion.

3. In a suit to enjoin a railroad company from laying an additional track across a much-traveled highway, or, in the alternative, for a decree fixing the mode and manner of the construction and laying of such track for the proper protection and safety of travelers, where there was no prayer for relief with respect to the existing tracks, and it appeared that it was not feasible to elevate or depress the additional track or carry the highway across it alone, and it appeared that the company was employing safeguards at the crossing conforming to the best modern requirements which were not criticised in any manner, and that it proposed to install the same safeguards with respect to the additional track, no relief could be granted under the alternative prayer.

*Mr. James J. Murphy,* for the complainant.

*Mr. W. R. Crosson,* for the defendants.

GRIFFIN, V. C.

The defendant Delaware, Lackawanna and Western Railroad Company (hereinafter called the Lackawanna) is the lessee of the defendant Morris and Essex Railroad Company (hereinafter referred to as Morris and Essex) and in possession of a steam railroad operated from the city of Hoboken, Hudson county, in a general westerly and northerly direction across the counties of Hudson, Essex and other counties of this state, and heretofore laid at grade two tracks across a road owned and maintained by the complainant known as Newark and New York turnpike, which point of crossing is called "Sanfords Crossing," and at the time of filing the bill herein said Lackawanna was engaged in laying a third track at grade, parallel with those theretofore laid and to the north thereof and had said track laid up to said Sanfords crossing and intended to lay the same across said turnpike at said crossing when restrained by the decree of this court.

The right of way of the Lackawanna crosses the highway at quite an acute angle, as appears by the following diagram:

It is agreed that the additional track will occupy twenty-five feet of the highway measured along the centre line thereof. A dispute, however, has arisen as to the space occupied by the two easterly tracks along said' centre line: The complainants say seventy-six ·feet; the Lackawanna says sixty-six. I am inclined to the view that the Lackawanna is correct, measuring along the centre line, but as vehicles have width, the complainant seems to be correct, not as to the centre line measurement, but the distance that the vehicle must travel before it is completely off the tracks.

On the foregoing facts the complainant, by leave of the court, filed its amended bill praying that the defendants be restrained from laying the additional track.

It will be perceived that this bill is not filed for relief against the existing tracks (as in the case of *Mayor, &c., of Newark* v. *Central Railroad Co., 73 N. J. Eq. 469*), but only against the laying of the additional track; therefore, the court may not decree with respect to those tracks, but may examine into the amount of traffic thereon and over the highway, and if on such inquiry it ascertains that the conditions are such that the use

now made of said crossing by the Lackawanna is such that the passage of carriages, horses and cattle on said road are impeded thereby, contrary to the terms of section 9 of the charter of the Morris and Essex (*P. L. 1835 p. 25*) and the General Railroad act (*3 Comp. Stat. p. 4231 § 26*), and finds the further fact that the additional track when in use will further impede the passage aforesaid, it will then become the duty of the court to enjoin its laying, but if it finds that the using of the additional track will not constitute an additional impediment, or will decrease the same, the injunction should be denied.

An examination of the facts shows that about two hundred and fifty trains pass over this crossing every twenty-four hours on week days, about two hundred and twenty of which are passenger trains running at a speed as high as sixty miles an hour, the remaining trains being freight, running at a very low speed; and during the same period about one thousand three hundred vehicles of all kinds and a few foot passengers pass along this highway over the tracks—but the rights of the respective parties should not be determined by spreading the traffic equally over the twenty-four hours, as during some periods of the day the traffic is much greater than at others. Thus, take three periods of one hour each, viz., between eight and nine A. M.—eighteen eastbound, seven westbound passenger trains and eighty-six vehicles of all kinds pass over this crossing, or one train every two minutes and twenty-four seconds, and one vehicle about every forty-five seconds; between five and six P. M.—four east and fifteen westbound passenger trains, about one every three minutes, and one hundred and three vehicles, about one every thirty-five seconds; between six and seven P. M.—seven east and eleven westbound and four freight trains, or one every two minutes and forty-five seconds, and ninety-nine vehicles, one every thirty-seven seconds.

In addition to the periods between the passage of these trains, the traffic is further delayed by reason of the gates being necessarily lowered while approaching trains are a long distance from the crossing.

From the foregoing exposition of the traffic on the railroad and turnpike, considering that the railroad of necessity has the right

of way, it would seem that the traffic over the turnpike is now impeded in the language of the charter and statute aforesaid, but, as above stated, the frame of the bill does not give the court power to deal with existing conditions, but only to inquire into them for the purpose of passing on the propriety of permitting the additional track to be laid. This leads to the question, Will the use of the additional track further impede traffic on the turnpike?

The complainant says that it has proved that the laying of the additional track will increase the hazard. The testimony upon which this claim is made is that of Mr. Wasser, the county engineer, whose testimony on the subject is, in effect, that the danger is increased by the traveling public being compelled to cross over one hundred feet of railroad instead of seventy-five, with the possibility of three trains being operated on the three tracks at or about the same time. If there was a long freight train on the track sought to be laid, and a vehicle was crossing the turnpike towards the east, this train would interfere with the vision of the traveler, particularly by reason of the acute angle at which the turnpike crosses the railroad. But this might also be said of a train on the westbound track.

The testimony of the defendants' engineers is to the effect that the running of the freight trains on the third track would neither increase nor diminish the hazard, but would result in raising the gates oftener, and free the turnpike of protracted obstruction, because, by removing the freight traffic from the main line, it would leave the passenger trains free to travel on schedule. The situation, from the railroad's view, is about as follows: The Harrison freight yard lies to the north of the tracks, and is about two and a half miles west of the tunnel. The freight trains run from this Harrison freight yard across the westbound track, over on the eastbound track, and when near the tunnel curve in and upon the westbound track, travel a short distance, and then lead off to Boonton. These freight trains travel at a very low rate of speed, and while they are on either track, or crossing the same, necessarily they block the traffic east and west, with the result that passenger trains both ways are held up until the way is clear, then passing over this turnpike

crossing in such rapid succession that the gates are kept down during the passage of several trains, thus resulting in a congestion of traffic on the turnpike; the engineers of the defendant say that with the additional track laid this freight traffic would be eliminated from the two present tracks, and by reason of the fact that the passenger trains then could run at regular intervals without these obstructions, the gates would be up a greater number of minutes in the day than at the present time; and in this view I concur. Therefore, in so far as traffic is concerned, it would relieve the congestion both on the railroad and on the highway.

This, therefore, leaves open the question, Will the laying of this additional track increase the danger of crossing? In the case of *Mayor, &c., of Newark v. Central Railroad Co. of New Jersey, supra,* Vice-Chancellor Stevens, in his opinion, said: "The bill is filed primarily to enjoin the defendant company from laying down, at grade, over Plum Point lane crossing, three tracks in addition to the three already there; and, secondarily, by mandatory injunction, to compel the railroad to cross Plum Point lane in some other manner than at grade." Then, after stating that since the decision of the chancellor in the case of *Newark v. Erie Railroad Co., 72 N. J. Eq. 447,* there can be no doubt that the court of chancery may compel railroad companies, whose roads cross streets at grade, and whose charters contain provisions like those of the defendants, to elevate or depress their tracks, or the highways crossing them, he proceeds to deal with the situation presented at that crossing. From the statement of facts in the opinion it appeared that Plum Point lane crossed the existing tracks diagonally; that Brill's yard lay to the south of the track, and, under the conditions existing, trains from the manufacturers' branch, which lay to the north of the tracks, entered on the main track and traveled along the same, over the lane, crossing the other tracks in the Brill yard. By the plan proposed, the trains, instead of entering into the existing tracks, would cross the same, cross Plum Point lane and connect with the manufacturers' branch. This made an additional crossing of the highway. It appeared that there passed over the existing tracks, daily, one hundred passenger trains and

twenty freight, the speed of the passenger trains being from forty to sixty miles an hour. The company desired the northerly track for the purpose of switching freight intended for the manufacturers' branch, instead of using one of the main tracks on which the swiftly-running passenger trains were constantly passing.

The vice-chancellor said: "It seems to me that it would conduce to the safety of the traveling public if the tracks were so laid. Its presence would not tend to increase or impede travel over the crossing. It would rather facilitate it." The situation there presented is precisely the same as in the present case; and it is my view that if the company be permitted to lay this additional track it will reduce the duration of interruptions to travel over the highway, without in any manner increasing the danger to those using the highway.

The vice-chancellor, in the above-mentioned case, then considered the laying of the two additional tracks south of the existing tracks, and finding that they were to be used for freight purposes, and that the use for that purpose would not only, at times, tend to block Plum Point lane, but obscure the vision of the traveling public while these freight cars, either were at rest or being drilled, he continued the injunction.

In addition to the prayer for injunction, the bill contains a prayer in the alternative, as follows: "Or, in case such tracks shall be laid across said turnpike, this court may by its decree fix the mode and manner of the construction and laying of such tracks, for the proper protection and safety of persons traveling over and along said turnpike."

It is conceded that this single track cannot be elevated nor depressed; it also appears that the highway cannot be carried across this single track; that the only feasible method is to carry it across all tracks. This relief cannot be afforded within the scope of the bill. Under the last-mentioned prayer the only relief the complainant may have is a definition of the safeguards to be used at the crossing. The defendant's witnesses describe the present methods of safeguarding this crossing, which seem to conform to the best modern requirements. The complainant does not in any manner criticise them, nor has it suggested other

additional safeguards. The defendants say that they propose to install the same safeguards with respect to the additional track that now exist in connection with the other two.

In this view of the case there is no evidence upon which the complainant is entitled to relief on this latter prayer.

Having reached the conclusion that the laying of this additional track only is brought in question by this bill, and that its laying will not further impede traffic on the road, the conclusion naturally follows that the order to show cause, with the restraint therein, should be vacated and a decree will be advised accordingly.